IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DEBBIE RODRIGUEZ, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 13 C 7290 |
| CAROLYN W. COLVIN, | ) | Judge Virginia M. Kendall |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Debbie Rodriguez seeks review of the Social Security Administration's decision denying her Supplemental Social Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. On July 17, 2012, an Administrative Law Judge ("ALJ") determined that Rodriguez was not disabled under federal law. The Social Security Appeals Council declined to review the ALJ's decision and this case followed pursuant to 42 U.S.C. § 405(g). Rodriguez challenges the ALJ's decision, alleging that the evidence did not support the ALJS's conclusion that she is not disabled. Specifically, she claims that the ALJ erred in affording controlling weight to the opinion of a non-treating medical expert and in not properly evaluating evidence of her manipulative limitations and pain. The parties filed cross-motions for summary judgment. For the following reasons, the Court denies Defendant's motion and grants Rodriguez's motion in part, remanding this case for further proceedings consistent with this opinion.

## BACKGROUND

Rodriguez applied for supplemental social security benefits on June 9, 2010, alleging disability beginning on March 20, 2000. (R. 141). Her claims were denied both initially and upon reconsideration. (R. 92, 100). At Rodriguez's request, a hearing was held on February 16, 2012, at which time an ALJ heard testimony from Rodriguez, represented by counsel, Susan A. Entenberg, a vocational expert, and Dr. Ronald Semerdjian, an independent medical expert. (R. 45-85). On July 17, 2012, the ALJ issued a written decision denying Rodriguez benefits. (R. 29-38). The ALJ found that, although Rodriguez was severely impaired by epidermolysis bullosa and chronic obstructive pulmonary disease, she was not disabled under the Act. (R. 31-38). The ALJ found that Rodriguez's impairments could be expected to cause the alleged symptoms, but that her statements about the "intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the assessed residual functional capacity." (R. 36). Based on his findings, the ALJ found that Rodriguez is still capable of performing light work. (R. 32). The Appeals Council denied Rodriguez's appeal on August 23, 2013 and this case followed. (R. 1-3).

**A. Physical Health**

Rodriguez was born on August 20, 1974. (R. 87). Throughout her adult life, Rodriguez has suffered from a number of physical ailments, including epidermolysis bolosa. (*See, e.g.*, R. 159) (identifying diagnoses such as asthma, arthritis, anemia, TB, and epidermolysis bolosa). Epidermolysis bolosa causes Rodriguez's skin to be unusually susceptible to blistering. (*See* R. 49). Due to this condition, Rodriguez can barely touch anything and can only walk about two blocks on a good day. (R. 173). She does not leave her house except for appointments and claims

2

that her children (ages 9, 11, 13, and 16) bathe her, brush her hair, feed her, help her to the bathroom, and clean her every day. (R. 169, 173).

Rodiguez has been treated by a number of doctors for her condition. On June 14, 2009, Rodriguez was admitted to the emergency room for an abcess on her right armpit (R. 244-247; 342-343). She was readmitted three days later for the same issue. (R. 248-249; 340-41). Again, from June 3, 2010 until June 8, 2010, Rodriguez was hospitalized for five days because of blisters on her hands. (R. 265-87; 300; 308-317; 442-452). One week later, she visited Dr. Taraneh Firoozi—a skin specialist—for her "sores." (R. 566).

About two months after that, from August 3, 2010 to August 6, 2010, Rodriguez was admitted to the hospital once again with right leg swelling and bilateral foot blisters. (R. 414-433; 502-22). She was readmitted to the emergency room on August 9, 2010 for skin irritation, fever, chills, weakness, and diarrhea. (R. 550-52). A month after that hospitalization, on September 15, 2010, Rodriguez was evaluated by Dr. Michael Rock for lesions on her left and right hands. (R. 356, 383). Dr. Rock diagnosed her with epidermolysis and chronic pain syndrome. (R. 383). He also noted that Rodriguez's disease "tends to flare" once a month. *Id*.

Dr. Firoozi wrote a letter on December 9, 2010 stating that Rodriguez's "skin disease is chronic, recurrent and aggravated by physical exertion specially in warm environment." (R. 565). On the contrary, one month later, Dr. Charles Carlton examined Rodriguez and opined that Rodriguez could sit and perform tasks that involve lifting up to 10-20 pounds when her hands are free of lesions. (R. 572). His evaluation of Rodriguez's fine and gross manipulative hand and finger movements indicated no difficulty performing a range of tasks, including opening a door using a knob; tying shoelaces; and picking up a pen. (R. 575).

On September 1, 2011, Rodriguez's primary physician Dr. Godwin D'Souza completed a RFC questionnaire indicating that Rodriguez had "flare-ups" once every 2-3 months that lasted 7-10 days. (R. 617-19). He also opined that Rodriguez would likely miss work "more than four days per month" as a result of her impairments or treatment. (R. 619).

### B. Work and Education

Rodriguez's highest level of education is ninth grade. (R. 160). She has an incredibly limited work history and has only held three jobs as an adult, all of which were many years ago. (*See* R. 187). In 1995 and 2000, Rodriguez worked as a fast food cashier, each time for only a couple of weeks. (R. 160). She also worked as a "sewer" for a weight lifting manufacturer for three days in 1998. *Id*. Rodriguez stopped worked in March 2000 due to her physical condition. (R. 159).

### C. Medical Expert Testimony

The ALJ arranged for an independent medical expert, Dr. Ronald Semerdjian, to testify at Rodriguez's hearing. Dr. Semerdjian opined that Rodriguez could maintain employment as long as her hands were protected from blistering by keeping her away from friction or a "higher risk of trauma." (R. 72). He also opined that Rodriguez would be able to "finger" in a job. (R. 74). Dr. Semerdjian conceded that if Rodriguez suffered lesions lasting 2.5-3 months or had a history of ten hospitalizations in a short time, she would be unable to be consistent in her employment. (R. 70-71). He maintained, however, that the record did not evidence her being hospitalized that many times or suffering blisters for that long a period of time. *Id*.

### D. Vocational Expert Testimony

In addition to Dr. Semerdjian, the ALJ also heard testimony from vocational expert Susan A. Entenberg. Entenberg opined that Rodriguez could attain a number of jobs in the Illinois

regional economy such as a cashier, packer, and light housekeeper. (R. 82). Entenberg was clear that her suggestions were based on Rodriguez having no manipulative limitations since such limitations would make identifying potential jobs "very hard." *Id*. She further opined that an individual would not be able to maintain employment if he missed more than one day per month of work on an unscheduled basis. (R. 83). When asked by the ALJ to limit Rodriguez's potential work environment so that she would not move around and strike objects, Entenberg replied: "[I]t's impossible. I hit my hand on the desk, I mean, it just happens." (R. 84). There was no further questioning by the ALJ or the attorney regarding potential restrictions on Rodriguez's physical job environment.

## **LEGAL STANDARD**

A reviewing court should affirm the Commissioner's final decision where it is supported by "substantial evidence" and is free from legal error. *Bates v. Colvin*, 736 F.3d 1093, 1097-98 (7th Cir. 2013) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where conflicting evidence allows reasonable minds to differ, the responsibility of determining disability belongs to the ALJ and not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). A court may not "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

However, the ALJ's decision must rest on "adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must "build a logical bridge from the evidence to [his] conclusion, but [he] need not provide a complete written evaluation of every piece of testimony and evidence."

*Shideler*, 688 F.3d at 310. If the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal quotation marks and citation omitted).

## DISCUSSION

In determining whether a claimant is disabled and ineligible for supplemental security income, an ALJ uses a sequential five-step inquiry that asks (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Kastner*, 697 F.3d at 646.

Here, the ALJ found that Rodriguez satisfies the first two steps because she has not engaged in substantial gainful activity since June 3, 2010 and has severe impairments of epidermolysis bullosa and chronic obstructive pulmonary disease. (R. 31). The ALJ ultimately concluded, however, that Rodriguez did not satisfy the Commissioner's listed impairments and had the residual functional capacity to perform light work. (R. 31-32). Rodriguez challenges the ALJ's adverse determination, primarily arguing that the ALJ erred in affording controlling weight to the opinion of a non-treating medical expert; excluding any manipulative limitations in his analysis; and improperly evaluating evidence of her pain. Because the ALJ failed to construct a logical bridge between his conclusions and the evidence presented in this matter, the ALJ's decision is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

### A. The ALJ's Assessment of Dr. Godwin D'Souza's Opinion

Dr. Godwin D'Souza became Rodriguez's primary care physician around 2008. *See* R. 617. After treating Rodriguez for about three years, he opined that Rodriguez's skin symptoms flared every 2-3 months for about 7-10 days and that Rodriguez was "incapable of even 'low stress' jobs." (R. 617-19). The ALJ initially assigned Dr. D'Souza's opinion "limited weight" because it was "internally-inconsistent with his own observation of the claimant's disease experience" and was "materially inconsistent with […] daily living activities" reported by Rodriguez. (R. 36). Three paragraphs later, he assigned Dr. D'Souza's opinion "no weight" because "substantial evidence contradicts his opinion." (R. 36). The problem is not that the ALJ gave Dr. D'Souza's opinion no controlling weight, but that he did not clearly state which weight he was giving it. Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted to simply gloss over it. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Social security regulation requires the ALJ to consider a number of factors when deciding how much weight to give the opinion: "(1) the [l]ength of the treatment relationship and the frequency of examination, because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant long enough to have obtained a longitudinal picture of the impairment, the more weight [her] opinion deserves; (2) the [n]ature and extent of the treatment relationship; (3) [s]upportability, i.e., whether a physician's opinion is supported by relevant evidence, such as medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area." *Id.* (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2-5).

This Court will not speculate as to why the ALJ chose to assign two different weights to Dr. D'Souza's opinions. The ALJ did not discuss any of the factors listed above in his opinion and we cannot now assess whether he appropriately chose to give limited or no weight to Dr. D'Souza's opinion. On remand, the ALJ should address these factors and clarify how much weight he is assigning Dr. D'Souza's opinion. *See Scrogham*, 765 F.3d at 698; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (explaining that when an ALJ denies a treating physician's opinion controlling weight, she must determine how much weight to afford the opinion based on the section 1527(c) factors)); *Hofstein v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (noting that the section 1527(c) factors are "designed to help the administrative law judge decide how much weight to give the treating physician's evidence").

Furthermore, this Court observes that the record contains a series of illegible progress notes written by Dr. D'Souza. *See, e.g.*, R. 227-31. Rodriguez asked Dr. D'Souza to prepare a set of legible notes, but he refused. *See* R. 79-80, 652. When Rodriguez sought intervention by the ALJ on May 22, 2012, (R. 652), the ALJ declined: "[There is] no point in recontacting [Dr. D'Souza]…because the claimant is not an accurate or reliable historian. To the extent that Dr D'Souza based his opinion on her history, his medical conclusion is unsupported." (R. 36-37). This Court does not consider, and Rodriguez does not ask it to consider, whether the ALJ was required to assist Rodriguez in attaining Dr. D'Souza's records. However, the ALJ's unsolicited explanation for not contacting Dr. D'Souza does not comport with the requirements of 20 C.F.R. § 404.1527(c)(2-5). If the ALJ cannot read Dr. D'Souza's notes, he cannot properly consider the 1527(c) factors and should not guess at the reliability of the doctor's opinion. The ALJ may not summarily dismiss a treating physician's opinion when it is properly before him and he may certainly not do so when the opinion is not before him. A doctor's opinions and notes may be

based wholly, partially, or not at all on a patient's history; but they are just as likely to be based on observation, tests, and other forms of empirical evidence. To the extent that the ALJ finds it appropriate to consider the remaining progress notes of Dr. D'Souza, he must consider the same factors discussed above in determining how much weight to assign them.

The ALJ may be able to articulate support to discount the opinions of Dr. D'Souza, but this Court is unable to trace the path of his reasoning on this issue. The errors in this part of the analysis require remand for a more comprehensive discussion of the evidence considered by the ALJ.

### B. The ALJ's Evaluation of Rodriguez's Manipulative Limitations

The ALJ's failure to consider the effect of Rodriguez's manipulative abilities on her functional limitations also requires remand. An RFC represents the maximum a claimant can perform on a "regular and continuing basis" despite his limitations. *See, e.g., Corniels v. Colvin*, 2014 WL 5420132, at *5 (N.D. Ill. 2014) (citing SSR 96-8p, 61 C.F.R. §§ 34474-5). Although the ALJ is not obligated to "discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

The ALJ did not evaluate, or even mention, potential manipulative limitations in this case despite evidence that such limitation may have been present. Rodriguez claimed before the ALJ that she had trouble moving her hands when she had blisters. (R. 58). The report by Dr. Carlton that the ALJ relied on so heavily to say that Rodriguez is "very active about the house" and chases her kids, *See* R. 36, also states that Rodriguez suffered "[i]mpaired grip [that] results in dropping things a lot." (R. 610). Dr. D'Souza's report, to the extent the ALJ considers it, indicates Rodriguez had "significant limitations in doing repetitive reaching, handling, or

9

fingering." (R. 618). The ALJ's omission of manipulative limitations is additionally perplexing because he appears to have considered such limitations at the hearing:

> VE: I just want to clarify that you said more fine fingering than handling and grasping or - -
>
> ALJ: Let's assign no manipulative limitations.
>
> VE: Okay, because that's very hard, Judge.
>
> ALJ: Right, no manipulative limitations.

(R. 81-82); *See also* SSR 96-9p (describing gross and fine manipulative limitations). The ALJ may have been justified in not finding any manipulative limitations at the hearing and in his ultimate decision, but the record is devoid of reasoning on this issue. The failure to include this analysis cannot be deemed harmless and must be addressed on remand.

**C. The ALJ's Credibility Analysis**

The ALJ's failure to consider the effect of Rodriguez's pain and other limitations similarly requires remand. A person can experience disabling pain even though no physical source can be verified by medical experts. *See Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) ("[P]ain can be real and intense yet its cause not be discernible by medical tests or examinations"). For this reason, while a lack of objective support from physical examinations is relevant in a credibility determination, an ALJ "may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) (citing SSR 96-7p(4)); *accord*. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). The ALJ concluded that Rodriguez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the assessed residual functional capacity." (R. 35-36). However, without further explanation, such language is "meaningless boilerplate because

it fails to link the conclusory statements made with objective evidence in the record." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013); *see also Martinez v. Astrue*, 630 F.3d 693, 695 (7th Cir. 2011) (boilerplate fails to specify which of the claimant's statements are not credible). The ALJ "was required to evaluate whether [Rodriguez's] statements about the intensity and persistence of [her] pain were consistent with the available evidence," but he failed to do so. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(2) (ALJ must consider a claimant's subjective complaints of pain and its effects on her)).

The ALJ discounted Rodriguez's credibility because he found her symptoms and limitations "inconsistent and unpersuasive" throughout the record. (R. 36). In support of this conclusion, the ALJ pointed out that Rodriguez "absconded" from an examination room in March 2012 and received treatment primarily from a general practitioner instead of a skin specialist. *Id*. The ALJ may be able to show on remand that these statements are inconsistent with other portions of the record, but this Court sees no reason why someone leaving an examination room leads to the "improbability that symptoms of the severity, intensity and frequency [Rodriguez] asserted are occurring" or how the mere fact that Rodriguez was treated primarily by a general practitioner instead of a specialist leads to the "probability that her symptoms likely are not as intense or disruptive as she asserts." *Id*. This Court will not speculate as to why Rodriguez left the examination room or received treatment from a specialist only once a year. The ALJ may be able to support his decision to discredit Rodriguez's testimony regarding her pain and other limitations, but he may not do so by "playing doctor" and drawing inferences to reach an independent medical conclusion. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009), (citing *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Schmidt v.*

*Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong.")).

For the reasons stated above, this Court concludes that the ALJ did not build the necessary logical bridge from the evidence considered to his conclusion that Rodriguez could perform certain unskilled, light work. The ALJ's flawed reasoning cannot be deemed harmless.

## **CONCLUSION**

For the foregoing reasons, the Court grants Rodriguez's motion. The judgment is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
Virg
United States District Court Judge
Northern District of Illinois

Date: 3/25/2015